UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 21-21125-CIV-MORENO**

BRYNDON KLINE,

       Plaintiff,

vs.

LAMAR BYRD, JR., LCBOHAZE
ORGANICS LLC, COLORADO NUTRA,
LLC, JAMES BRIAN CLARK, and ANDREA
SEED OILS, LLC,

       Defendants.
_____/

**ORDER DENYING DEFENDANT CLARK'S MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

This matter came before the Court upon Defendant James Brian Clark's Motion to Dismiss for Lack of Personal Jurisdiction (**D.E. 14**). Clark's motion is denied because Plaintiff Bryndon Kline has alleged sufficient jurisdictional facts to satisfy Florida's long-arm statute—Clark committed a tortious act within the state of Florida—and exercising personal jurisdiction over Clark for his alleged tort, intentional misrepresentations made to a Florida resident at the time, would not violate the Due Process Clause. Because the remaining claims against Clark arise from the same jurisdiction-generating event, the Court shall exercise pendent personal jurisdiction over the remaining claims.

**I. BACKGROUND**

This is a case where one of the Defendants, James Brian Clark, a California resident, allegedly misrepresented that his company, Andreas Seed Oil, would deliver "vegan, gluten free, USDA organic, non-gmo, and kosher" Cannabidiol ("CBD") products to a Florida company,

Green Origins, LLC. Green Origins was engaged in the sale and distribution of organic CBD products prior to its dissolution. Clark allegedly made these misrepresentations to the Plaintiff, Bryndon Kline, a Florida resident at the time of the events alleged in the complaint. Green Origins contracted with Andreas Seed and another Defendant, Colorado Nutra LLC, for the certified products for $87,800.00. As alleged, Andreas Seed and Colorado Nutra breached that contract when they delivered non-compliant products to Green Origins. Following the breach, Kline claims that he entered a settlement agreement with Clark and Andreas Seed for the repayment of the monies owed to him, as Kline was the surviving member of Green Origins. Clark and Andreas Seed made two payment of $5,000 to Kline but have failed to pay the remainder of what is owed under the contract—$77,800.00.

Kline filed suit against the Defendants. As to Clark, Kline alleges the following causes of action: "enforcement of settlement agreement" (Count I); "negligent misrepresentation" (Count III); "intentional misrepresentation" (Count IV); "breach of duty of good faith and fair dealing" (Count V); and "unjust enrichment" (Count VI). Clark is the only Defendant that has appeared in the case—the others are in default. (D.E. 8, 19). Clark now moves to dismiss the complaint for lack of personal jurisdiction.[1]

## II. ANALYSIS

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (internal citations omitted). "The reach of the [Florida long-arm] statute is a question of Florida

---

[1] Clark did not file a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6); thus, this order does not address the legal sufficiency of the causes of action against Clark in the complaint.

law. [F]ederal courts are required to construe [such law] as would the Florida Supreme Court. Absent some indication that the Florida Supreme Court would hold otherwise, [federal courts] are bound to adhere to decisions of [Florida's] intermediate courts." *Id.* at 1274-75 (citing *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1271 (11th Cir. 2002)).

The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant. *Meier*, 288 F.3d at 1271. When dealing with a motion to dismiss for lack of personal jurisdiction, courts must accept the factual allegations in the Complaint as true and, should the defendant "submit[] affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *See Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

### A. Florida's Long-Arm Statute

"Florida's long-arm statute provides for both general and specific personal jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citing Fla. Stat. § 48.193(1)-(2)). "General personal jurisdiction exists when a defendant 'is engaged in substantial and not isolated activity within this state…whether or not the claim arises from that activity." *Id.* (citing § 48.193(2)). Stated differently, "[g]eneral personal jurisdiction is based on a defendant's substantial activity in Florida without regard to where the cause of action arose." *Mosseri*, 736 F.3d at 1352.

"On the other hand, specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action."

*See id.; see also Fabrica de Fideos Rivoli, S.A. v. Famex Investments Limited*, 225 So.3d 312 (Mem) (Fla. 3d DCA 2017) (citing *Venetian Salamu Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989) (providing that personal jurisdiction over a nonresident defendant exists where: (1) the complaint alleges sufficient jurisdictional facts to satisfy Florida's long-arm statute, section 48.193 of the Florida Statutes; and (2) the nonresident defendant has sufficient minimum contacts with Florida to satisfy constitutional due process concerns)).

Clark contends that there is no specific personal jurisdiction over the causes of action against him because Florida's long-arm statute has not been satisfied. Clark submitted an affidavit with his motion to dismiss, where he avers as follows: (1) his place of residence or domiciliary is in California; (2) he has no permanent or temporary residence in Florida; (3) he does not own any real estate, personal property or any other assets in Florida; (4) he does not conduct any personal business in Florida; (5) he does not maintain any business or personal records in Florida; (6) he has never travelled to Florida in relation to or in connection with any of the allegations in the complaint; (7) he did not engage in any activities to serve his own personal interest; and (8) with respect to the allegations in the complaint, any conduct or actions attributable to him were done as a member of Andreas Seed. (D.E. 14-1). Notably, in his affidavit, Clark does not deny that he made misrepresentations to Kline. *See id. generally.*

Kline argues that there is specific jurisdiction over Clark via Florida's long-arm statute, that is, there are sufficient jurisdictional facts alleged here to satisfy Florida's long-arm statute under § 48.193(1)(a)2. *Id.* at 5-7.[2] Florida's long-arm statute provides, in relevant part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself [], and, if he [] is a natural person, his [] personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following actions:

---
[2] In his opposition, Kline does not argue that this Court has general jurisdiction over Clark.

4

    2. Committing a tortious act within this state.

§ 48.193(1)(a)2. Moreover, Kline attached a sworn declaration to his opposition where he avers that Clark, the sole managing member of Andreas Seed, made misrepresentations to him concerning the quality of the CBD oil, and, at that time, he was a Florida resident. (D.E. 20-1 ¶ 6).

    The Court agrees with Kline and finds that, at a minimum, Florida's long-arm statute has been satisfied for the intentional misrepresentation claim (Count IV) as it is alleged that Clark committed a tortious act—an intentional misrepresentation—by committing a tortious act within this state. *See* § 48.193(1)(a)2. The Court must accept the allegations in the complaint as true unless the defendant submits a non-conclusory affidavit contrary to the allegations. *See Stubbs*, 447 F.3d at 1360. Here, the complaint alleges that "[Kline] is the surviving member and the successor of assets to Green Origins [], a Florida limited liability company that engaged in the sale and distribution of Cannabidiol ("CBD") products." Green Origins contracted with Defendant Colorado Nutra and Andreas Seed for products that were certified to be "vegan, gluten free, USDA, organic, non-gmo, and kosher." As alleged, that contract was negotiated and executed in Miami, Florida, for the shipping of goods to Miami, Florida. The intentional misrepresentation claim includes allegations of Clark's tortious conduct, namely, that Clark misrepresented to Kline that the products ordered by his company, Green Origins, were organic and compliant with United States Department of Agriculture and/or Food and Drug Administration regulations. The complaint further alleges that Clark knew or had reason to know the products were non-compliant, but he delivered them anyway, and that Kline relied on this misrepresentation and sustained damages as a result. These allegations remain uncontroverted by Clark's affidavit. Kline also submitted his own affidavit where he states that, "Clark [] made misrepresentations to him that Green Origins would receive CBD oils that would meet U.S. Department of Agriculture standards

to be certified organic." Moreover, in his affidavit, Kline states that he was a Florida resident at the time that Clark made the misrepresentations to him.

For the first time in his reply, Clark contends that Florida's corporate shield doctrine prevents this Court from exercising personal jurisdiction over him. (D.E. 21. at 3-4). "The 'corporate shield' doctrine, also referred to as the 'fiduciary shield' doctrine, provides that acts performed by a person exclusively in his corporate capacity not in Florida but *in a foreign state* may not form the predicate for the exercise of personal jurisdiction over the employee in the forum state." *See Kitroser v. Hurt*, 85 So.3d 1084, 1088 (Fla. 2012) (emphasis in original) (citing *Doe v. Thompson*, 620 So.2d 1004, 1005 (Fla. 1993)). In *Kitroser*, the Florida Supreme Court stated that "[t]he rationale behind the corporate shield doctrine is that it may be unfair to force an individual to defend an action filed against him personally in a forum with which his only relevant contacts are acts performed totally outside the forum state and not for his own benefit but for the exclusive benefit of his employer." *Id.* (internal citations omitted).

However, as noted in Kline's surreply,[3] there is an exception to the corporate shield doctrine: "Where an individual, nonresident defendant commits negligent acts in Florida, whether on behalf of a corporate employer or not, the corporate shield doctrine does not operate as a bar to personal jurisdiction in Florida over the individual defendant." *Kitroser*, 85 So.3d at 1090. The Florida Supreme Court in *Kitroser* reasoned, "[t]o hold otherwise [no jurisdiction over persons that commit torts within Florida] would be tantamount to providing corporate employees with a form of diplomatic immunity and would abolish the legislative goal inherent in adopting a long-arm jurisdictional statute: to provide an in-state forum to hold those responsible who commit

---

[3] Given that Clark raised this argument for the first time in his reply, the Court ordered Kline to file a surreply addressing the corporate shield doctrine's applicability here to shield Clark from Florida's long-arm statute.

negligent acts in Florida. Florida courts have personal jurisdiction over nonresident defendants whose alleged negligent acts occur in-state irrespective of whether these acts occurred for the benefit of a corporate employer." *See id.*

Clark acknowledges this exception to the corporate shield doctrine, but maintains it is inapplicable here because a tort was not committed in Florida. Yet, Florida's District Court of Appeals for the First District has noted that, "[a]lthough the exception for committing a tort 'in Florida' generally requires a defendant's physical presence, the exception may also encompass alleged tortious acts involved, if those acts involved communication directed into Florida for the purpose of committing a fraud, slander, or some other intentional tort." *See LaFreniere v. Craig-Myers*, 264 So.3d 232, 238 (Fla. 1st DCA 2018) (internal citations omitted).

The Court finds that the exception to the corporate shield doctrine applies here because the "[the alleged tortious] acts involved communication directed into Florida for the purpose of committing a fraud." *See id.* Clark's intentional misrepresentations were directed to a Florida company, Green Origins, and a Florida resident at the time, Kline, and were made by way of communications directed into Florida because, according to Clark's affidavit, he has "never travelled to Florida in relation to or in connection with any of the allegations in the Complaint." (D.E. 14-1 ¶ L.). Hence, because "under Florida law, a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act *outside* the state that causes *injury within Florida*, on the record before this Court, Kline has alleged sufficient jurisdictional facts showing that Florida's long-arm statute has been satisfied for his claim of intentional misrepresentation against Clark. *See Mosseri*, 736 F.3d at 1353 (emphasis in original) (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008)). Because the Court finds that there are sufficient jurisdictional facts that satisfy Florida's long-arm statute as to the intentional misrepresentation claim against

Clark, *see* § 48.193(1)(a)2., the Court must next determine whether Clark has sufficient minimum contacts to satisfy constitutional due process concerns. *See Fabrica de Fideos Rivoli, S.A.*, 225 So.3d 312 (Mem) (citing *Venetian Salamu Co.*, 554 So.2d at 502).

### B. Due Process Clause

"In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Mosseri*, 736 F.3d at 1355 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,472-73, 474-75 (1985)). The plaintiff carries the burden of satisfying the first two prongs, and, once parts one and two of this test are satisfied, the burden then shifts back to the defendant on part three, that is, the defendant must then show that the exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice. *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018).

Clark maintains that there are no minimum contacts and that "[t]his Court lacks jurisdiction over [Clark] because he has not purposefully or indirectly availed himself to be subject to this Court's jurisdiction." As to the third prong, Clark concedes that the exercise of personal jurisdiction comports with "traditional notions of fair play and justice."

### 1. Whether Kline's intentional misrepresentation claim "arises out of or relates to" at least one of Clark's contacts with the forum.

For a court to exercise specific personal jurisdiction, the plaintiff's claim must arise out of or relate to the defendant's contacts with the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021). "Or put just a bit differently, there must be 'an affiliation

8

between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal citations omitted). And as the Supreme Court recognized in *Ford*, "[t]he first half of [the arise out of or relate to] standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *See id.*

The first prong of the due process test is satisfied here. Kline's intentional misrepresentation claim arises out of or relates to Clark's contacts with the forum. In his complaint, Kline alleges that Clark certified that the products ordered by Green Origins—located in Miami, Florida—were organic and compliant with United States Department of Agriculture and/or Food and Drug Administration regulations and Clark knew or reasonably should have known that Green Origins would not be able to use non-compliant products, but Clark and Andreas Seed delivered the non-compliant products to Green Origins anyway. (D.E. 1 ¶¶ 54-55, 57). Moreover, Kline, the surviving member of Green Origins, submitted a declaration where he avers that Green Origins was formerly headquartered in Florida and he was a resident of Florida at all times relevant to the events described in the complaint. In his affidavit, Clark does not deny that he made the alleged misrepresentations. As such, the Court finds that Kline's intentional misrepresentation claim arises out of or relates to at least one of Clark's contacts with the forum, namely, his alleged misrepresentations to a Florida company, Green Origins, and its surviving member who was a Florida resident at the time, Kline.

### 2. Whether the nonresident defendant, Clark, "purposefully availed" himself of the privilege of conducting activities within Florida.

"In *intentional* tort cases, there are two applicable tests for determining whether purposeful availment occurred"—the "effects test" or the "traditional purposeful availment analysis." *See Mosseri*, 736 F.3d at 1356 (emphasis in original) (internal citation omitted). In his supplemental

brief, Kline directs the Court to the "effects test," as recognized by the Eleventh Circuit in *Mosseri*. *See id.* (citing *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* (citing *Lovelady*, 544 F.3d at 1285). "This occurs when the tort: '(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated in the forum state.'" *Id.* (citing *Lovelady*, 544 F.3d at 1285-86, 1287-88).

Kline has shown that the second prong of the due process test is met here because there are sufficient jurisdiction facts to satisfy the effects test: an intentional tort is alleged—intentional misrepresentations made by Clark to Kline—and the misrepresentations were aimed at Florida and caused harm that Clark should have anticipated in Florida, given that the contract was negotiated and executed in Miami, Florida, for the shipping of goods to Miami, Florida. (D.E. 20-1 ¶ 3). *See Mosseri*, 736 F.3d at 1356. For the first time, in his supplemental brief, Clark claims "he possessed no reason to believe that he was engaging in business with a Florida entity or Florida persons." However, Clark did not state so in his affidavit. In his affidavit, Clark did not deny that the contract was negotiated and executed in Miami, Florida, or that the goods were to be shipped to Miami, Florida; Clark also failed to state that he did not know he was engaging in business with a Florida company and resident.

Because courts must accept the factual allegations in the complaint as true and Clark has failed to "submit[] [an] affidavit[] contrary to the allegations in the complaint," based on the evidentiary record here, the Court finds that the effects test has been satisfied and Clark purposefully availed himself of the privilege of conducting activities within Florida. *Stubbs*, 447 F.3d at 1360.

10

> **3.   Whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."**

As Clark has the sufficient minimum contacts with the forum state, the Court must next consider the third prong, whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." Clark concedes that the third prong is met here. Accordingly, the Court finds that the exercise of personal jurisdiction over Clark comports with traditional notions of fair play and substantial justice.

Thus, the Court finds that exercising personal jurisdiction over Clark does not offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Having found that Kline has alleged sufficient jurisdictional facts to satisfy Florida's long-arm statute as to the intentional misrepresentation claim against Clark, *see* § 48.193(1)(a)2., and the exercise of personal jurisdiction over Clark and this claim would not violate the Due Process Clause, the Court need not address whether it has personal jurisdiction over the other claims because there is pendent personal jurisdiction for the remaining claims alleged against Clark.

### C. Pendent Personal Jurisdiction

The Eleventh Circuit has held that "[i]f the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction-generating event." *See Thomas v. Brown*, 504 Fed. Appx. 845, 847 (11th Cir 2013) (citing *Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993)). Here, the Court has pendent personal jurisdiction over the remaining claims against Clark—enforcement of the settlement agreement (Count I), the negligent misrepresentation (Count III), breach of duty of good faith and fair dealing (Count V), and unjust enrichment (Count VI) because they all "arose from the same jurisdiction-generating event"—Clark's alleged misrepresentations that the CBD products were organic and complied with United States

Department of Agriculture and/or Food and Drug Administration regulations, and these misrepresentations were made to a Florida company, and a Florida resident at the time, which were harmed as a result. As such, the Court shall exercise its discretion and exercise personal jurisdiction over the remaining claims against Clark.

### III. CONCLUSION

Accordingly, for the foregoing reasons, Clark's motion to dismiss for lack of personal jurisdiction is denied.

DONE AND ORDERED in Chambers at Miami, Florida, this 16th of September 2021.

*Federico A. Moreno*

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record